FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES ALLEN HYDRICK; DAVID
LANPHERE; SHAUNDALE GRIFFIN;
FRANK CISNEROS; PAUL PEDERSON;
STEVEN ROBERT CERNIGLIA; GARY
PRICE; DANIEL MROWICI; KENNETH
CIANCIO; MICHAEL MCCLURE; JAMES
MATA; RICHARD BISHOP; MELVIN
FIELDS; RON LEE; LEONARD PIERRE;
THOMAS PRICE; JIMMY GUTHRIE;
BRIAN KELLY; WOODROW JONES;
VASHON JACKSON; BRUCE RILEY;
FRED SCOTT; DEAN DANFORTH;
SAMMY PAGE; JAMES PETERS;
GRAYLING MITCHELL; CARLOS
SAUCEDO; ANTHONY DACAYONA;
CHARLES SALAS, et al,
                    *Plaintiffs-Appellees,*

                    v.

MELVIN E. HUNTER, aka/Jon
DeMorales; CRAIG NELSON;
GRENDA ERNST,
                    *Defendants-Appellants,*

                    and

ROBERT MCDANIEL; JERRY
REYNOLDS; ROBERT PENATE;
SAMUEL ROBINSON; MARK
MAHHONEY; STEPHEN MAYBERG;
ANITA JUDD; MICHAEL HUGHES; JIM
VESS; JACK TOWNSEND; MARK
PALMER; ROCKY SPURGEON; ARNIE
GOBBELL; JIM WILEY; MARK
KALIONZES; ELAINE SHERRILL; GLAN
MIKEL; JAN MAIRE ALARCON
BARUCH MARGALIT; WILLIAM
KNOWLTON; DIANE IMRAM; CARMEL
MULLER; DALE ARNOLD; GABRIELLA
PALADINO; JEAN DANSEREAU; et al;
WILLIAM CHARLES THIEL; ROBERT
DOUGLAS LEFORT; ARNOLD
SCHWARZENEGGAR, Governor of
California,

                          *Defendants.*

No. 03-56712

D.C. No.
CV-98-07167-TJH

OPINION

On Remand from the Supreme Court of the United States

Filed January 12, 2012

Before: Mary M. Schroeder, Harry Pregerson, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Joel E. Krischer, Latham & Watkins LLP, Los Angeles, California, for the plaintiffs-appellees.

Randall R. Murphy, Deputy Attorney General, Los Angeles, California, for the defendants-appellants.

## OPINION

PREGERSON, Circuit Judge:

This case concerns a class action by civilly committed persons ("Plaintiffs") confined at Atascadero State Hospital in Atascadero, California. Plaintiffs are confined at Atascadero State Hospital under California's Sexually Violent Predator Act. *See* Cal. Welf. & Inst. Code § 6600 *et seq*. The Defen-

dants are administrators of the hospital and various state officials who serve in a supervisory capacity.[1]

## BACKGROUND

In 2002, Plaintiffs filed their Second Amended Complaint[2] in federal district court alleging that the conditions of their confinement violate their constitutional rights under 42 U.S.C. § 1983. The Second Amended Complaint, in addition to requesting declaratory and injunctive relief, also sought money damages against the Defendants in their individual capacities. Before the district court, Defendants, claiming qualified immunity, moved to dismiss Plaintiffs' claims for money damages. The district court denied that motion. Defendants then brought an interlocutory appeal under the collateral order doctrine, *see Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999), challenging the district court's order denying qualified immunity.

In 2007, we issued an opinion affirming in part and reversing in part the district court's order denying the Defendants qualified immunity. *Hydrick v. Hunter*, 500 F.3d 978, 983 (9th Cir. 2007). Specifically, we held that the Defendants were entitled to qualified immunity on Plaintiffs' Ex Post Facto, Double Jeopardy, Procedural Due Process, and Eighth Amendment claims, as well as Plaintiffs' First Amendment "refusal of treatment" claim. *Id.* at 992, 1000. But we also held that the Defendants were not entitled to qualified immunity on the remainder of Plaintiffs' claims. *Id.* at 1000. Like the district court, our opinion did not rule on the merits of

---

[1]Because this case is on remand from the Supreme Court, we reiterate the background of this case only briefly. A fuller description of the factual and procedural history can be found in our amended opinion, reported at 500 F.3d 978.

[2]The Second Amended Complaint contains no substantive alterations from the First Amended Complaint, but merely substitutes the current Executive Director of Atascadero State Hospital for the former Executive Director. *See Hydrick v. Hunter*, 500 F.3d 978, 984 n.4 (9th Cir. 2007).

Plaintiffs' claims or on Plaintiffs' claims for injunctive and declaratory relief.

The Defendants then petitioned for certiorari. The Supreme Court granted the writ, vacated our judgment, and remanded for reconsideration in light of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). *Hunter v. Hydrick*, 129 S. Ct. 2431 (2009). On remand, we ordered supplemental briefing by the parties on the impact of *Iqbal*. After receiving several extensions, the parties completed supplemental briefing on January 31, 2011.

As discussed in more detail below, after reviewing the Supreme Court's decision in *Iqbal*, the parties' supplemental briefs, and our court's recent decision in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), we now hold that Defendants are entitled to qualified immunity on Plaintiffs' claims for money damages. The conclusory allegations in Plaintiffs' Second Amended Complaint are insufficient to establish Defendants' individual liability for money damages.

Our holding, however, is limited. Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief. *See Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 794-95 (9th Cir. 2008); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993). Accordingly, on remand, the Plaintiffs may proceed with their claims for declaratory and injunctive relief.

## DISCUSSION

The Supreme Court remanded this case to us for reconsideration in light of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). *Hunter*, 129 S. Ct. at 2431. After we deal with *Iqbal*, we will consider our court's recent decision in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), which interpreted *Iqbal*. Both cases

involve supervisor liability and qualified immunity under 42 U.S.C. § 1983.

In *Iqbal*, the plaintiff was a citizen of Pakistan and a Muslim who was "arrested on criminal charges and detained by federal officials" in the wake of the September 11, 2001 attacks. 129 S. Ct. at 1942. The plaintiff filed suit in federal district court, alleging that "he was deprived of various constitutional protections while in federal custody." *Id*. Included in his complaint were claims against former Attorney General John Ashcroft ("Ashcroft") and the Director of the F.B.I., Robert Mueller ("Mueller"). *Id*. Specifically, the plaintiff alleged that Ashcroft and Mueller discriminated against him in violation of the First and Fifth Amendments because they adopted a policy that subjected the plaintiff "to harsh conditions of confinement on account of his race, religion, or national origin." *Id*. On appeal, the Second Circuit held that Ashcroft and Mueller were not entitled to qualified immunity. *Id*.

**[1]** The Supreme Court reversed. *Id*. at 1954. In reversing the Second Circuit, the Supreme Court noted that, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 1948.[3] The Court then held that Ashcroft and Mueller were entitled to qualified immunity because plaintiff's complaint was based on "bald" and "conclusory" allegations and did not contain "plausible" allegations that Ashcroft and Mueller personally committed a constitutional tort. *Id* at 1948-52. In so holding, the Court

---

[3]A suit against a federal official under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Iqbal*, 129 S. Ct. at 1948 (internal quotation marks and citation omitted). Because Ashcroft and Mueller were federal, rather than state officials, Iqbal's complaint was based on *Bivens* liability rather than liability under 42 U.S.C. § 1983. *Id*. at 1943.

explained that the plaintiff failed to allege sufficient facts to "plausibly suggest" that Ashcroft and Mueller acted with a "discriminatory purpose" — a required element of plaintiff's discrimination theory. *Id.* at 1950, 1948. The Court did not consider a claim for supervisory liability under § 1983 based on a claim of "deliberate indifference." *See Starr*, 652 F.3d at 1207 ("We see nothing in *Iqbal* indicating that the Supreme Court intended to overturn longstanding case law on deliberate indifference claims against supervisors in conditions of confinement cases.").

In *Starr*, the plaintiff, an inmate at the Los Angeles County Jail, was physically attacked by inmates and deputy sheriffs in January of 2006. 652 F.3d at 1204. The plaintiff filed suit in federal district court against Los Angeles County Sheriff Leroy Baca as well as the deputies involved in the attack. *Id.* The plaintiff argued that the conditions of his confinement violated the Eighth and Fourteenth Amendments. *Id.* The plaintiff contended that even though Sheriff Baca was not personally involved in the attack, Sheriff Baca was nonetheless "liable in his individual capacity because he knew or should have known about the dangers in the Los Angeles County Jail, and that he was *deliberately indifferent* to those dangers." *Id.* at 1204-05 (emphasis added).

**[2]** Our court held that Sheriff Baca was not entitled to qualified immunity because the plaintiff pleaded sufficient facts to plausibly suggest Sheriff Baca's "knowledge of" and "acquiescence in" the unconstitutional conduct of his subordinates. *Id.* at 1207. In reaching this holding, our court recounted plaintiff's "many allegations in the complaint detailing what Sheriff Baca knew or should have known, and what Sheriff Baca did or failed to do." *Id.* at 1209. Our court noted that the plaintiff's complaint contained detailed allegations about: (a) a letter Sheriff Baca received from the Department of Justice in 1997 discussing a pattern and practice of "abuse of inmates by sheriff's deputies working in the jail and inmate on inmate violence"; (b) weekly reports Sheriff Baca

received "from his subordinates responsible for reporting deaths and injuries in the jails"; (c) a 1999 Memorandum of Understanding that Sheriff Baca and the County of Los Angeles entered into with the Department of Justice, where Sheriff Baca and the County agreed to "address and correct the continuous constitutional violations to which inmates were being subjected"; (d) a 2006 report by the Department of Justice which found "noncompliance with many of its recommendations regarding the abuse of inmates"; (e) an incident in 2002 where Sheriff Baca was informed of a physical attack on an inmate by a sheriff's deputy and the inmate's subsequent death, and no investigation was conducted; (f) the deaths of two inmates in 2003 as a result of lax oversight by sheriff's deputies; (g) the deaths of three inmates in 2004 as a result of lax oversight by sheriff's deputies; and, (h) a 2005 incident where an inmate who was booked on a non-violent misdemeanor was misclassified by sheriff's deputies, placed near "high risk" inmates, and beaten to death by fellow inmates. *Id.* at 1209-11 (internal quotation marks omitted).

After recounting the detailed factual allegations in plaintiff's complaint, our court held that Sheriff Baca was not entitled to qualified immunity under a "deliberate indifference" theory of liability because: (1) the plaintiff's complaint recounted specific incidents where Sheriff Baca was on notice of inmate deaths and injuries and "systematic problems in the county jails"; and, (2) the factual allegations in the plaintiff's complaint "plausibly suggest[ed] that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates," because there was no "obvious alternative explanation" for Sheriff Baca's inaction. *Id.* at 1216 (internal quotation marks and citation omitted).

**[3]** As discussed in greater detail below, in the case before us, the factual allegations in Plaintiffs' complaint resemble the "bald" and "conclusory" allegations in *Iqbal*, instead of the detailed factual allegations in *Starr*. *See Iqbal*, 129 S. Ct. at 1951; *Starr*, 652 F.3d at 1216. Accordingly, Plaintiffs

pleaded insufficient facts to establish "plausible" claims against the Defendants in their individual capacities and the Defendants are entitled to qualified immunity.

## I.   Defendants Are Entitled to Qualified Immunity on Plaintiffs' Claims for Money Damages

The Plaintiffs' complaint proceeds under two theories of liability against the Defendants in their individual capacities. Plaintiffs allege that the Defendants are: (a) liable for their own conduct because they created policies and procedures that violated the Plaintiffs' constitutional rights; and, (b) liable because they were deliberately indifferent to their subordinates' constitutional violations. *See Hydrick*, 500 F.3d at 988. Plaintiffs' allegations fail to state claims against Defendants in their individual capacities under either theory of liability.

**[4]** Plaintiffs' complaint is based on conclusory allegations and generalities, without any allegation of the specific wrongdoing by each Defendant. For example, Plaintiffs' Fourth Amendment claim alleges that Defendants' "policies, practices and customs subject [Plaintiffs] to unreasonable searches; searches as a form of punishment; degrading public strip searches; improper seizures of personal belongings; and the use of unreasonable force and physical restraints." But there is no allegation of a *specific* policy implemented by the Defendants or a *specific* event or events instigated by the Defendants that led to these purportedly unconstitutional searches.

**[5]** Plaintiffs' remaining claims suffer from the same infirmities. Plaintiffs' First Amendment retaliation claim alleges that "Defendants have personal knowledge of retaliation against [the Plaintiffs] for participation in lawsuits, but Defendants' policies, practices and customs permit and encourage retaliation." But there is no allegation of a *specific* policy or custom, nor are there specific allegations regarding each Defendant's purported knowledge of the retaliation. The

remainder of Plaintiffs' claims are likewise devoid of specifics.

**[6]** The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Even under a "deliberate indifference" theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's "knowledge of" and "acquiescence in" the unconstitutional conduct of his subordinates. *Starr*, 652 F.3d at 1206-07. In short, Plaintiffs' "bald" and "conclusory" allegations are insufficient to establish individual liability under 42 U.S.C. § 1983. *See Iqbal*, 129 S. Ct. at 1950-53; *cf. Starr*, 652 F.3d at 1216-17.

## II. Plaintiffs May Proceed on their Claims for Declaratory and Injunctive Relief

**[7]** "[C]laims for injunctive and declaratory relief are unaffected by qualified immunity." *Malik v. Brown*, 16 F.3d 330, 335 n.4 (9th Cir. 1994) (citing *Los Angeles Police Protective League*, 995 F.2d at 1472). Accordingly, Plaintiffs may proceed with their claims for declaratory and injunctive relief, notwithstanding our holding on qualified immunity.

## CONCLUSION

Defendants are entitled to qualified immunity on Plaintiffs' claims for money damages. On remand, the Plaintiffs may proceed with their claims for declaratory and injunctive relief.

**REVERSED and REMANDED.**