**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 24 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GEORGE RICHARD AYDELOTTE, Plaintiff-Appellant, v. TOWN OF SKYKOMISH; et al., Defendants-Appellees. | No.    15-35885 D.C. No. 2:14-cv-00307-RSL MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted May 16, 2018
Pasadena, California

Before:  WARDLAW, NGUYEN, and OWENS, Circuit Judges.

George Aydelotte appeals the district court's grant of summary judgment on

his 42 U.S.C. § 1983 action for First Amendment retaliation against the Town of

Skykomish (Skykomish) and various municipal officers in their official capacities.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in

part, and remand.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.     The district court erred in concluding that Mayor Grider was entitled to qualified immunity with respect to Aydelotte's First Amendment retaliation claim. *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 731 (2011).

The court failed to view the facts in the light most favorable to Aydelotte, as it was required to do on summary judgment. *Mattos v. Agarano*, 661 F.3d 433, 439 (9th Cir. 2011) (en banc). Moreover, it considered each incident of harassing behavior separately in its qualified immunity analysis, as opposed to assessing whether Aydelotte's right to be free from a "campaign of harassment and humiliation" in retaliation for his speech was clearly established. *Coszalter v. City of Salem*, 320 F.3d 968, 975–76 (9th Cir. 2003) (holding that "severe retaliatory actions" including "campaigns of harassment and humiliation" could support a § 1983 claim for First Amendment retaliation).

Properly viewing the law and facts, we conclude that Aydelotte's right to be free from a campaign of harassment and humiliation in retaliation for constitutionally protected speech was clearly established. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) ("State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment."), *cert. denied*, 479 U.S. 1054 (1987); *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (same); *see also Coszalter*, 320 F.3d at 975–76.

In addition, there is a genuine dispute of material fact as to whether Mayor Grider retaliated against Aydelotte in violation of his First Amendment rights. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). To prevail on his First Amendment retaliation claim, Aydelotte had to show first, that he engaged in constitutionally protected activity; second, that Mayor Grider engaged in conduct that would chill a person of ordinary firmness from further First Amendment activity; and, third, that Mayor Grider acted with the motive of chilling Aydelotte's speech. *Id.*

Aydelotte engaged in constitutionally protected speech when he criticized Skykomish officials and filed a complaint in the Washington Public Disclosure Commission. *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) ("[S]peech that concerns 'issues about which information is needed or appropriate to enable members of society' to make informed decisions about the operation of their government merits the highest degree of [F]irst [A]mendment protection." (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940))).

Thereafter, Mayor Grider engaged in a litany of actions against Aydelotte, which, viewed in the light most favorable to Aydelotte, would chill a person of ordinary firmness from continuing to speak out. *Blair*, 608 F.3d at 543. Aydelotte adduced evidence that after he engaged in protected speech, Mayor Grider had his fence destroyed, ticketed and threatened to ticket his vehicle, threatened to tow his

3

vehicle, excluded him from the start of a public meeting, instructed him to remove his signs protesting the Skykomish government,[1] and threatened Aydelotte with eviction from his property. Viewing these facts in the light most favorable to Aydelotte, there is a genuine dispute as to whether there was adverse action against Aydelotte. *Coszalter*, 320 F.3d at 976 ("[I]f the plaintiff[] . . . can establish that the actions taken by the defendant[] were reasonably likely to deter [him] from engaging in protected activity . . . [he] will have established a valid claim under § 1983.").

Finally, Aydelotte raised a genuine dispute as to whether Mayor Grider took adverse action against him for the purpose of stopping his efforts to uncover local government corruption. *Blair*, 608 F.3d at 543. Mayor Grider explicitly threatened Aydelotte that "he would need to behave to continue to live there" when they discussed Mayor Grider's ticketing. Moreover, the traffic tickets began appearing on Aydelotte's vehicle after Aydelotte questioned Mayor Grider about

---

[1] The district court erred in concluding that Mayor Grider's actions with respect to Aydelotte's signs could not be considered First Amendment retaliation because the signs "[ran] afoul of the Skykomish sign code." Whether there has been First Amendment retaliation does not depend on whether Mayor Grider's actions were lawful or permissible, but rather on whether Aydelotte's protected speech was a "substantial or motivating factor" for Mayor Grider's actions. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (citations omitted); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). Here, Aydelotte adduced sufficient evidence to raise a genuine dispute as to whether his speech was a substantial or motivating factor in the signs' removal.

4

his involvement with the Burlington Northern Santa Fe Railway, the company that was found to have paid kickbacks to other Skykomish officials. And, notably, police officers did not issue traffic tickets to Aydelotte's neighbor who parked his car virtually identically on property across the street. Finally, Mayor Grider personally called tow trucks to Aydelotte's home after police officers placed traffic tickets on Aydelotte's vehicle. Based on this evidence, a jury could find that the motivating factor in Mayor Grider's actions against Aydelotte was retaliation for Aydelotte's exercise of his protected right to speak.

2. The district court erred by dismissing Aydelotte's claims for injunctive and declaratory relief against Mayor Grider on the basis of qualified immunity. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) ("[C]laims for injunctive and declaratory relief are unaffected by qualified immunity.").

3. The district court incorrectly concluded that Skykomish could not be held municipally liable. Aydelotte adduced sufficient evidence to create a genuine dispute as to whether the campaign of harassment against him resulted from individual acts (1) pursuant to an expressly adopted official policy; (2) pursuant to a longstanding practice or custom; or (3) taken by a "final policymaker." *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82 (9th Cir. 2010), *rev'd on other grounds*, 566 U.S. 377 (2012); *see also Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018). In addition to the evidence of Mayor Grider's retaliatory conduct,

5

Aydelotte submitted evidence that Skykomish officials destroyed a rock foundation at his property, that his building inspector threatened him, and that the then-Deputy Sheriff threatened to prosecute him.[2] A reasonable jury could conclude based on this evidence that Skykomish had "a longstanding [policy] or custom," *Delia*, 621 F.3d at 1081–82, of retaliating against Aydelotte for the exercise of his protected rights. *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970))).

4. Accordingly, the district court erred in dismissing Aydelotte's claims for injunctive and declaratory relief against Skykomish on the basis of its lack of an official policy, because genuine disputes of material fact existed. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("Local government entities . . . can

---

[2] In total, Aydelotte identifies nearly nine years' worth of harassing incidents by various Skykomish officials. While not all of the incidents Aydelotte identifies are within the three-year statute of limitations for his § 1983 First Amendment retaliation claim, *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (the statute of limitations in a § 1983 claim is the same as provided under state law for tort claims alleging personal injury); RCW § 4.16.080(2) (setting out a three-year statute of limitations under Washington state law for personal injury claims), all of the incidents outlined above occurred within the three-year statute of limitations.

be sued directly [under *Monell*] for monetary, declaratory, or injunctive relief . . . .").

5. The district court properly dismissed Aydelotte's claims without prejudice against certain defendants (Darrell Joselyn, Charlotte Mackner, Robert Mackner, Michael Descheemaeker, Michael Pierce, Deborah Allegri, and Fred Brandt) for lack of timely service under Federal Rule of Civil Procedure 4(m). Aydelotte failed to demonstrate "good cause" for his failure to serve these defendants, *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009), or that his failure was due to excusable neglect. *Id*. Aydelotte claims that he failed to serve the remaining defendants because an individual threatened to kill him if he continued his lawsuit. But Aydelotte fails to explain how this threat prevented him from serving the remaining defendants; nor did he submit additional evidence indicating any barriers to service. Therefore, the district court did not abuse its discretion in concluding that this "bald assertion" did not amount to good cause for failure to serve the remaining defendants.

6. Aydelotte argues for the first time on appeal that Defendants violated the Takings Clause of the Fifth Amendment by (1) repeatedly citing Aydelotte's vehicle while it was on his property, and (2) destroying part of Aydelotte's fence. Because Aydelotte did not raise this argument in the district court, or in his opening brief, he has waived it. *United States v. U.S. Dist. Court for S. Dist. of*

7

*Cal.*, 384 F.3d 1202, 1205 (9th Cir. 2004); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

**AFFIRMED in part; REVERSED in part; REMANDED.**

Each party shall bear its own costs of appeal.